UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JERMAINE D. HEFLIN,

                Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

                Defendants.

_____/

Case No. 1:24-cv-523

Honorable Phillip J. Green

**OPINION**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion (ECF No. 2) for leave to proceed *in forma pauperis*.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge.  (ECF No. 1, PageID.18.)

       This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants MDOC, Washington, Bush, Dodds-Dugan, MCF, Schiebner,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Winger, Kludy, Jollands, and Barnes.  The Court will also dismiss, for failure to state a claim, Plaintiff's due process, retaliation, Eighth Amendment, and access to the courts claims against remaining Defendant VanderWiel.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the Michigan Department of Corrections (MDOC), MDOC Director Heidi Washington, Correctional Facilities Administration (CFA) Director Jeremy Bush, Deputy Director Cindy Dodds-Dugan, MCF, Warden James Schiebner, Deputy Warden Jeanine Winger, Assistant Deputy Warden J. Kludy, Administrative Law Judge (ALJ) Unknown Jollands, Grievance Coordinator C. Barnes, and Corrections Officer Unknown VanderWiel.  (Comp., ECF No. 1, PageID.2–4.)

Plaintiff alleges that on October 26, 2023, Defendant VanderWiel stuck his hand into the doorway of Room 216 and displayed his middle finger to another inmate in a gesture that means, "F**k You." (ECF No. 1, PageID.5.)  Plaintiff observed this behavior from Unit 5, which is upstairs.  (*Id.*)  Plaintiff contends that Defendant VanderWiel's conduct violated the Corrections Officers' Code of Professional Conduct. (*Id.*)

Plaintiff states that in an attempt to defuse the situation, he approached Defendant VanderWiel and "respectfully" reminded him that such a gesture could provoke violence.   (*Id.*)   Plaintiff states that Defendant VanderWiel made

inappropriate hand gestures toward Plaintiff in response, as well as made a "racially motivated veiled threat of retaliation." (*Id.*, PageID.5–6.)  Later that day, Defendant VanderWiel "destroyed" Plaintiff's cell and removed his mattress, forcing Plaintiff to sleep on a steel bedframe.  (*Id.*, PageID.6–7.)  Plaintiff also claims that Defendant VanderWiel tossed legal papers on the dirty floor, leaving them ripped and/or missing, which adversely affected Plaintiff's access to the courts.  (*Id.*, PageID.8.) (Grievance, ECF No. 1-1, PageID.44.)[2]

Following that incident, Plaintiff became cautious around Defendant VanderWiel and filed grievances.  (ECF No. 1, PageID.7.)  Plaintiff states that the grievance coordinator and administration at MCF failed to properly consider Plaintiff's grievance regarding Defendant VanderWiel taking his mattress, and that the response merely stated that the situation was remedied within 48 hours.  (*Id.*,

---

[2] The Court may consider documents that are attached to a pro se complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g., Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20- 4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in the documents Plaintiff attaches to the complaint except to the extent that Plaintiff relies on the truth of those statements in his complaint.

PageID.9.)  In the step I grievance response, it is noted that Plaintiff received a replacement mattress on the morning of October 27, 2023, the morning following Defendant VanderWiel's confiscation of the mattress.  (ECF No. 1-1, PageID.34.) Plaintiff, who is Black, states that he later discovered that Defendant VanderWiel provided a Caucasion prisoner with an immediate replacement for his mattress when it was confiscated.  (ECF No. 1, PageID.9.)  Plaintiff alleges that the evidence against the Caucasian prisoner was more concerning than the evidence against him, because the Caucasian prisoner had been found to have cut his mattress open to conceal prison-made alcohol, while the damage to Plaintiff's mattress had been done prior to Plaintiff moving into his room.  (*Id.*)

Plaintiff alleges that subsequently Defendant VanderWiel began to come into Plaintiff's room to conduct routine shakedowns on a regular basis.  (*Id.*, PageID.10.) Plaintiff claims that this conduct caused him emotional distress and affected his eating habits and sleep patterns.  (*Id.*)  Plaintiff asserts that the lack of appropriate grievance responses indicates a flagrant disregard for Defendant VanderWiel's conduct by MCF Administration.  (*Id.*)

On November 14, 2023, Plaintiff was lying in bed when he saw Defendant VanderWiel come to his door and put on disposable gloves.  Plaintiff claims that he was "overwhelmed" by Defendant VanderWiel's harassment and jumped off his bed and handed Defendant VanderWiel a bag of liquid that was contained in a clear garbage bag."  (*Id.*, PageID.11.)  Defendant VanderWiel then had Corrections Officer Stevens, who is not a party to this action, conduct a search of the cell.  (*Id.*)  Following

the shakedown of his cell, Plaintiff received a Class-1 Misconduct Report from Corrections Officer Stevens for having a garbage bag full of dark brown concentrated liquid which smelled of fermentation in his area of control.  (*Id.*)  Plaintiff states that during the hearing, the video showed that Defendant VanderWiel took the bag of liquid given to him by Plaintiff and took it back into the cell.  (*Id.*)  Plaintiff asserts that this is in contrast to Defendant VanderWiel's statement during the hearing investigation that the bag was never in his possession.  (*Id.*, PageID.12.)

Plaintiff alleges that Defendant Jollands stated on the record that it was unclear whether there were two bags of liquid in Plaintiff's cell or if the bag of liquid discovered by Defendant Stevens was the same bag initially given to Defendant VanderWiel by Plaintiff.[3]  (*Id.*, PageID.13.)  Plaintiff alleges that Corrections Officer Stevens, who is not named as a Defendant in this case, subsequently became unreasonable, retaliatory, and unprofessional towards Plaintiff.  (*Id.*)

---

[3] Plaintiff attached the misconduct report and the misconduct hearing report that he references in this action to a verified complaint he filed in another action filed on the same day as the present complaint. Misconduct Report, Misconduct Hr'g Report, *Heflin v. Mich. Dep't of Corr.*, No. 1:24-cv-522 (W.D. Mich.) (ECF No. 1-1, PageID.22, 23–24.) Based on the lack of clarity regarding whether one bag or two bags were involved, Defendant Jollands found Plaintiff not guilty of the misconduct. *Id*. Plaintiff quotes from, and relies upon, the misconduct report and the misconduct hearing report in the present complaint. (Compl., ECF No. 1, PageID.11–12.) "[C]ourts can . . . take judicial notice of certain documents that are quoted-in-part or referenced in a complaint." *Rogers v. Webstaurant Store, Inc.*, 774 F. App'x 278, 282 (6th Cir. 2019) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 554, 568 n.13 (2007)). The Court takes judicial notice of the two reports.

Plaintiff appears to be asserting claims under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks damages against all Defendants and injunctive relief against Defendant MDOC. (*Id.*, PageID.19–20.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Committed by a person

Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (noting "a State is not a 'person' against whom a § 1983 claim . . . might be asserted" and citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (stating that the "MDOC . . . is [not] a person that may be sued . . . under § 1983"). Therefore, the Court dismisses Plaintiff's complaint against the MDOC for failure to state a claim upon which relief can be granted.

Plaintiff also names MCF as a Defendant in this case. MCF is not a separate entity capable of being sued. As this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to

house prisoners.  They are not the proper public entity for suit"  *Id*. at *7; *see also Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit . . .[; i]t is a department of the county  . . . ."); *Caruthers v. Corr. Medical Serv., Inc.*, No. 1:10-cv-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable of being sued.  Rather, it is a building owned by the Michigan Department of Corrections."); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action.  Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Because MCF is not an entity separate from the MDOC—and the MDOC is not a person under the statute—MCF is also not a "person" under § 1983.  *See, e.g.*, *Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same).  Therefore, the Court will dismiss Plaintiff's complaint against Defendant MCF for failure to state a claim upon which relief can be granted.

## B.    Defendant Jollands

Plaintiff seeks compensatory and punitive damages in the amount of $50,000.00 from Defendant Hearing Officer Unknown Jollands.  Plaintiff's suggestion that Defendant Jollands somehow wronged Plaintiff is difficult to understand.  The

crux of Plaintiff's complaint is that Defendant Jollands somehow covered up the inconsistency between the misconduct report as written and the video evidence. That is simply not the case. Based on Plaintiff's own admission, he handed Defendant VanderWiel a bag filled with liquid. Based on that admission, the only issue that remained was whether or not the bag of liquid was in Plaintiff's area of control and/or whether the bag of liquid that Officer Stevens found in Plaintiff's area of control was the bag that Plaintiff handed to VanderWiel.

The video evidence could not resolve the first question. The video showed that Plaintiff handed the bag to Defendant VanderWiel at the cell door—not that VanderWiel had found the bag in one area of the cell or another. The uncertainty at the heart of the second question exists because it is impossible to reconcile VanderWiel's claim that he never possessed ***the*** bag with the video evidence that VanderWiel possessed ***a*** bag with brown liquid. Defendant Jollands's analysis does not cover up the VanderWiel's apparent lie, it highlights the lie. Accordingly, Plaintiff's allegations do not support the inference that Defendant Jollands wronged Plaintiff in any way. Put differently, Plaintiff fails to allege any facts that state a claim against Defendant Jollands.

Moreover, the Court notes that Defendant Jollands enjoys absolute judicial immunity. The duties of MDOC hearing officers are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(6). Their adjudicatory

functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *see also Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017); *Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554–55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivations of civil rights). Therefore, in that sense as well, Plaintiff has failed to state a claim against Defendant Jollands upon which relief can be granted.

### C.    No Active Unconstitutional Conduct

Plaintiff fails to allege that Defendants Washington, Bush, Dodds-Dugan, Schiebner, Winger, Kludy, or Barnes took any action against him, other than to suggest that unnamed administrative staff failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active

12

unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts showing that Defendants Washington, Bush, Dodds-Dugan, Schiebner, Winger, Kludy, and Barnes encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Instead, he claims they "FAILED to establish and/or enforce a MANDATORY POLICY that: (1) "prohibit[ed]" Defendant VanderWiel "from engaging in conduct PROHIBITED by State Law(s); (2) "protect[ed] prisoners from harassment, retaliation, racial discrimination or any other wrongdoing;" (3) "strictly PROHIBIT[ED] any/all employees from engaging in any conduct that may cause damage to the property of a prisoner;" (4) "strictly PROHIBIT[ED] any/all employees from asserting 'any false allegations' toward a Michigan prisoner;" (5) REQUIRE[D] 'any/all' investigations of prisoner Complaints to be conducted with a strict measure of Professional Integrity and Honesty;" (6) "ensure[d] every member of Staff employed by the Department of Corrections has been properly trained and properly educated in how their conduct MUST be maintained;" and (7) "properly informs, and does so with the diligence required to establish a CLEAR UNDERSTANDING by ALL STAFF MEMBERS that the primary objective in any Dep't of Corrections is Rehabilitation." (Compl., ECF No 1, PageID14–15.)  Moreover, the Defendants: (8) "Failed to exhibit the Professional Condcut REQUIRED of any such person(s) who maintain employment in a field that is responsible for the Safe Management 'and' Rehabilitation of Human Beings" and (9) FAILED to fulfill their duties, and/or obligations to provide a Safe Environment, Free from Misconduct of the Staff Members, to promote Rehabilitation of Michigan Prisoners." (Id., PageID.15–16.) Not

taking all of the preventative steps that Plaintiff urges is hardly active participation in Defendant VanderWiel's alleged misconduct.

Plaintiff's vague and conclusory allegations regarding the failure of Defendants Washington, Bush, Dodds-Dugan, Schiebner, Winger, Kludy, or Barnes to promulgate mandatory policies are hardly sufficient to show that they actively participated in Defendant VanderWiel's misconduct. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Washington, Bush, Dodds-Dugan, Schiebner, Winger, Kludy, or Barnes are premised on nothing more than respondeat superior liability, they are properly dismissed for failure to state a claim.

### C.    Defendant VanderWiel

#### 1.    Due Process

To the extent that Plaintiff seeks to assert a due process against Defendant VanderWiel related to the alleged fraud regarding the bag of liquid found in Plaintiff's cell and the resulting misconduct ticket, such a claim lacks merit. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995).

First, no matter what happened with respect to any misconduct ticket, the duration of Plaintiff's sentence would not change. Plaintiff is serving a life sentence for murder. *See* MDOC Offender Tracking Information System,

15

https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=483317 (last visited Oct. 15, 2024). Although there are incentives for serving time without misconducts, those incentives do not impact the duration of the sentence under *Sandin*.

In general, the MDOC no longer rewards prisoners for serving time "misconduct free." Instead, prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, are given "disciplinary time" when they are found guilty of a major misconduct. *Taylor v. Lantange*, 418 F. App'x 408, 412 (6th Cir. 2011; Mich. Comp. Laws § 800.34. Plaintiff is incarcerated for a crime he committed on December 23, 2014. Therefore, he is subject to disciplinary time with regard to his indeterminate sentence. Mich. Comp. Laws § 800.34.

Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole board for consideration at parole reviews or interviews. The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009). Moreover, Plaintiff's life sentence for murder is not parolable; therefore, disciplinary time could not impact him in any way.

Second, the sanctions for a disciplinary finding of guilt would not rise to the level of atypical and significant hardships. Under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as

follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The sanctions for Class-II and Class-III misconducts are similar, but with shorter maximum durations.

The most significant sanction and, therefore, hardship, is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Lesser sanctions of toplock or loss of privileges would certainly be no worse than segregation. Put simply, any penalty Plaintiff might have faced because of the misconduct report would not rise to the level of an atypical and

17

significant hardship. Moreover, because Plaintiff was ultimately found not guilty of the misconduct, he was never punished.  Accordingly, the Court finds that, to the extent pled, Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim with regard to the misconduct proceedings.

### 2.    Equal Protection

Plaintiff claims that Defendant VanderWiel discriminated against him on the basis of race when he confiscated Plaintiff's damaged mattress and failed to give him a replacement mattress, which resulted in Plaintiff having to sleep on a steel bedframe for one night. In response to Plaintiff's step I grievance on this issue, the respondent, Sergeant A. Brown, stated:

> On November 13th, 2023, I interviewed prisoner Heflin who claimed his original mattress was taken by first shift Officer VanderWiel on October 26th, 2023. According to Heflin, Officer VanderWiel made no attempt [to] get or remedy the lack of [a] mattress in Heflin's cell. Heflin went on to state how later that night he sought help from Officer Vandeusen, who allegedly refused to notify a supervisor to get a mattress. Prisoner Heflin lastly stated by the morning of October 27th, 2023 he had received a mattress.

> On November 13th, 2023, I interviewed Officer Vandeusen who confirmed that he had spoken with prisoner Heflin about his mattress on October 26th, 2023. According to Officer Vandeusen he believed it was an issue caused by day shift which he claimed he was unsure of the nature and or potential restrictions accompanying prisoner Heflin's mattress being taken.

(Step I Grievance Response MCF-23-10-0986-03F, ECF No. 1-1, PageID.34.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*,

473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

In addressing whether the plaintiff had alleged facts constituting direct evidence of discrimination, the Sixth Circuit in *Umani* stated:

> This court has held that "direct evidence of discrimination does not require a fact-finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir.2003). Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other

than to discriminate on the basis of some impermissible factor. *Rojas v. Florida,* 285 F.3d 1339, 1342 n. 2 (11th Cir.2002). Isolated and ambiguous comments are insufficient to support a finding of direct discrimination. *White v. Columbus Metro. Hous. Auth.,* 429 F.3d 232, 239 (6th Cir.2005).

*Id.,* 432 F. App'x at 458-59.

In this case, Plaintiff fails to allege any direct evidence of discrimination on the part of Defendant VanderWiel. In the absence of direct evidence, Plaintiff must show that he was a member of a protected class, that he was subjected to adverse treatment, and that the treatment he received was different from that received by similarly situated prisoners who were not members of a protected class. *Id.,* 432 F. App'x at 460.

In this case, Plaintiff asserts that Defendant VanderWiel's conduct can be construed as discriminatory because several months later on January 13, 2024, Defendant VanderWiel treated a similarly situated Caucasian inmate differently. In support of this claim, Plaintiff attaches a copy of a step I grievance detailing the way Defendant VanderWiel treated that prisoner. (Step I Grievance MCF-24-01-79-28I, ECF No. 1-1, PageID.46.) In the grievance, Plaintiff asserts that Inmate Thompson, who happened to be Caucasian, had damaged his mattress in order to conceal prison made alcohol. The fermented liquid was discovered on January 13, 2024, during a routine shakedown. Plaintiff states that Defendant VanderWiel allowed Inmate Thompson to keep the mattress that night, thus ensuring that Inmate Thompson did not have to sleep without a mattress. Plaintiff states that Defendant VanderWiel took Inmate Thompson's mattress the next morning and allowed Inmate Thompson to get a replacement mattress from another cell. (*Id.*)

The Court concludes that although Plaintiff's equal protection claim against Defendant VanderWiel is largely conclusory, he has alleged minimally sufficient facts at this point in the litigation to avoid dismissal of this claim.

### 3.    Eighth Amendment

Plaintiff appears to be claiming that Defendant VanderWiel violated his Eighth Amendment rights when he deprived Plaintiff of a mattress for one night. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)

(quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In this case, Plaintiff states that Defendant VanderWiel confiscated Plaintiff's damaged mattress but failed to take any measures to replace the mattress that evening.  Plaintiff contends that as a result, he had to sleep on a steel bed frame, which caused back and shoulder pain.  According to the step II grievance response regarding the alleged denial of care for Plaintiff's back and shoulder pain, a nurse evaluated Plaintiff over the phone on October 27, 2023, and determined that Plaintiff's condition was not urgent.  (ECF No. 1-1, PageID.39.)  Plaintiff was seen by medical on November 1, 2023, and no acute findings were noted on assessment.  (*Id.*) Plaintiff fails to allege that he suffered any injury other than temporary soreness as a result of having to sleep without a mattress for one night.

Deprivation of a mattress for one night seems to fall into the category of "temporary inconvenience," *Dellis v. Corr. Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001), or "routine discomfort," *Hudson*, 503 U.S. at 9, rather than a "deprivation[] of essential food, medical care, or sanitation . . . or . . . other condition[] intolerable for prison confinement," *Rhodes*, 452 U.S. at 348.  "In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment."  *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011); *see also Grissom v. Davis*, 55 F. App'x 756, 757–58 (6th Cir. 2003) (stating "the district court properly dismissed Grissom's complaint as it failed to allege facts that, if proven, would rise to the level of the serious deprivation and deliberate indifference required to support an Eighth Amendment claim . . . [citations omitted] Grissom neither alleged nor presented any evidence that

23

the seven-day mattress restriction deprived her of basic human needs or caused her to suffer serious harm"); *Shaw v. Mangione*, 27 F. App'x 407, 408 (6th Cir. 2001) (affirming district court dismissal on screening because allegation that Plaintiff was deprived of a mattress and blanket for one night failed to "r[i]se to the level of an Eighth Amendment violation"); *Watison v. Perry*, No. 23-5059, 2024 WL 3461194, at *2 (6th Cir. Feb. 15, 2024) (stating, with regard to an eight-day deprivation, "a short-term deprivation of clothing, bedding, and other personal property has not been found to violate the Eighth Amendment"); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) (noting that "[t]he defendants did not violate Jones's Eight Amendment rights by depriving him of a mattress for a two week period").

As noted above, Plaintiff fails to allege facts showing that he suffered anything other than temporary soreness in his back and shoulder.  Consequently, the Court concludes that Plaintiff fails to state an Eighth Amendment claim against Defendant VanderWiel.

### 4.    Access to the courts

Plaintiff claims that during a shakedown of his cell, Defendant VanderWiel tossed legal papers on the dirty floor, leaving them ripped and/or missing, which Plaintiff contends adversely affected his access to the courts.  (*Id.*, PageID.8.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The

Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v.*

*Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 415.

Plaintiff states that Defendant VanderWiel caused a "dis-organized catastrophe" with his legal materials, which caused him "substantial hardships" in trying to prepare his appeal.  (ECF No. 1, PageID.8.)  Plaintiff fails to specify the appeal he was working on at the time of the search.  The Court notes that Plaintiff was sentenced to life imprisonment for felony murder on March 9, 2016.  *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=483317 (last viewed Oct. 15, 2024).  Plaintiff pursued two appeals relating to his criminal convictions: a direct appeal as of right, *see People v. Heflin*, No. 332338, 2017 WL 4158020 (Mich. Ct. App. Sept. 19, 2017) and *People v. Heflin*, 909 N.W.2d 241 (Mich. 2018); and an appeal of the denial of Plaintiff's motion for relief from judgment, *see*

*People v. Heflin*, 953 N.W.2d 394 (Mich. 2021).  Both appeals were final long before the events at issue in this complaint.  Plaintiff has filed two cases in this Court, including the present case.  Both cases were filed months after the events at issue in the complaint; thus, Plaintiff could not have been pursuing an appeal of those decisions.

Plaintiff has a habeas petition pending in the United States District Court for the Eastern District of Michigan, *Heflin v. MaCauley*, No. 2:29-cv-11230 (E.D. Mich.). That case is presently stayed so that Plaintiff might pursue relief in the state trial court.  Order, *id*. (ECF No. 9).  But, the time for Plaintiff to file his motion for relief from judgment in the state trial court expired long before the events at issue in Plaintiff's complaint.  *Id.* (requiring Plaintiff to file his state court motion by July 14, 2023); (Compl., ECF No. 1, PageID.5 ("This has been an 'on-going' incident, involving the identified C/O, Officer VanderWiel, since the date of October 26, 2023")). Moreover, Plaintiff filed his motion by the deadline and he has filed several documents with the state court since that time.  Register of Actions, *People v. Heflin*, No.   15-000826-01-FC   (Wayne   Cnty.   Cir.   Ct.),   available   at https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=2444264 (last viewed Oct. 15, 2024).  The state court denied the motion on September 27, 2024, after Plaintiff filed this action.  *Id*.  Thus, that denial could not be the "lost remedy" at issue in Plaintiff's access-to-the-courts claim.

Plaintiff does not allege he lost a remedy because of Defendant VanderWiel's actions. Instead, he alleges that he faced substantial hardships. That does not suffice to state a claim for denial of access to the courts. Accordingly, Plaintiff's First Amendment access-to-the-courts claim is properly dismissed.

### 5. Retaliation

Plaintiff claims that Defendant VanderWiel retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that he engaged in protected conduct when he told Defendant VanderWiel that he should not be gesturing toward another prisoner by raising his middle finger. An inmate has a right to file "non-frivolous" grievances against prison officials ***on his own behalf***, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016)

("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). However, a prisoner does not have an independent right to help others with their legal claims and grievances, unless the inmate receiving the assistance would otherwise be unable to seek redress. *Herron v. Harrison*, 203 F.3d 410, 415-16 (6th Cir. 2000) (citing *Thaddeus-X*, 175 F.3d at 395) (holding that while a prisoner does not have an independent right to help others with their legal claims and grievances, such conduct is protected when the inmate receiving the assistance would otherwise be unable to seek redress).

Plaintiff does not allege that the other prisoner was attempting to obtain access to the courts or to file a grievance and that he could not have done so without Plaintiff's assistance. In fact, there is no indication that the other inmate was even bothered by Defendant VanderWiel's conduct. Because Plaintiff fails to allege that

he was engaged in protected conduct, his retaliation claim against Defendant VanderWiel is properly dismissed.

### 6.    State law claims

To the extent that Plaintiff is asserting violations of state law, the Court notes that claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

It may be that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*,

465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, because Plaintiff's federal claims against Defendants MDOC, Washington, Bush, Dodds-Dugan, MCF, Schiebner, Winger, Kludy, Jollands, and Barnes are properly dismissed, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction as to those Defendants. However, because Plaintiff continues to have a federal claim pending against Defendant VanderWiel. the Court will exercise supplemental jurisdiction as to Plaintiff's state law claims against Defendant VanderWiel.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants MDOC, Washington, Bush, Dodds-Dugan, MCF, Schiebner, Winger, Kludy, Jollands, and Barnes will be dismissed with prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants MDOC, Washington, Bush, Dodds-Dugan, MCF, Schiebner, Winger, Kludy, Jollands, and Barnes will be dismissed without prejudice to Plaintiff's ability to pursue those claims in state court.

The Court will also dismiss, for failure to state a claim, Plaintiff's due process, retaliation, Eighth Amendment, and access to the courts claims against remaining Defendant VanderWiel.   Plaintiff's equal protection claim against Defendant VanderWiel will remain in the case.

An order consistent with this opinion will be entered.


Dated:  October 17, 2024                    /s/ Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge